IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT WELLMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 13-cv-0616 ) |
| BUTLER AREA SCHOOL DISTRICT ET AL, | ) Judge Mark R. Hornak ) ) |
| Defendants. | ) ) ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Presently before the Court is the Second Amended Complaint ("SAC") of the Plaintiff, Robert Wellman, Jr., against the Defendants, the Butler Area School District ("School District") and Dr. John Wyllie, Principal of the Butler Area High School. ECF No. 24. Mr. Wellman has alleged three Counts: Counts I & II assert violations of Section 504 of the Rehabilitation Act ("RA") and Title II of the Americans with Disabilities Act ("ADA") against the School District; Count III alleges a violation of the Fourteenth Amendment via 42 U.S.C. § 1983 against the School District and Dr. Wyllie.

Each of Mr. Wellman's claims stem from events surrounding an injury he sustained as a freshman in high school on August 31, 2009. ECF No. 24, at ¶ 8. According to the SAC, Mr. Wellman suffered head injuries while playing flag football in gym class and also at football practice the same afternoon. *Id.* at ¶¶ 9–10. A CT scan confirmed that he sustained a concussion. *Id.* at ¶ 11. He had "persistent" symptoms, which included "pain, staring spells, trouble sleeping and difficulty concentrating." *Id.* The SAC asserts that Mr. Wellman's mother spoke with school officials about the Plaintiff's need for accommodations when he returned to school, but officials

1

made his transition back to school difficult, the stress of which "exacerbated [Plaintiff's] condition." *Id.* at ¶¶ 12–14. Despite a doctor's note to Dr. Wyllie "asking for academic accommodations," officials made no changes to Plaintiff's educational program. *Id.* at ¶¶ 15–16.

On September 30, 2009, Mr. Wellman attended the school's football game to support the team although he was not cleared to play in the game. *Id.* at ¶ 18. The SAC alleges that the football coach had Mr. Wellman "work the chains and hold one of the markers on the side of the field" during the game. *Id.* at ¶ 19. While performing this function, a player ran into Mr. Wellman, causing him to hit his head and suffer significantly worse symptoms. *Id.* Plaintiff was subsequently "diagnosed with post-concussive syndrome with symptoms which included headaches and other cognitive issues including difficulty remembering, and processing information, difficulty sleeping and severe anxiety." *Id.* at ¶ 22. When he returned to school, Mr. Wellman's situation deteriorated because officials "ignore[d] his doctor's request for accommodations," *id.* at ¶ 23, to the point where Mr. Wellman ultimately began "homebound instruction" in October of 2009, *id.* at ¶ 26.

After several unsuccessful attempts to return to school, the School District had the Plaintiff evaluated at his mother's request, but determined that he was ineligible for an Individualized Education Program ("IEP"). *Id.* at ¶ 34. However, "[a]n independent evaluation performed that same month," showed that Mr. Wellman "met clinically significant criteria for anxiety disorder and cognitive disorder due to a medical condition." *Id.* at ¶ 34. After two meetings held to formulate an acceptable plan, *id.* at ¶¶ 35–36, Mr. Wellman determined that he could not return to school and enrolled first in Cyber School and then in a private school. *Id.* at ¶¶ 37–38.

Mr. Wellman and his parents filed a Due Process Complaint on March 26, 2012 under the Individuals with Disabilities Education Act ("IDEA") against the School District, requesting a hearing, an IEP to address his educational needs, compensatory education for two years, and

payment of the Plaintiff's private school tuition. *Id.* at ¶ 39. On August 26, 2013, the parties entered into a Settlement and Release Agreement. *Id.* at ¶ 41. The SAC states that "[a]s part of the settlement Wellman and his parents agreed to release the school district from any claims which were pursued in the due process case or which could have been pursued in the due process case." *Id.* at ¶ 42. The SAC also requests "all other available remedies at law, including an award of compensatory damages, punitive damages, attorney fees for this action, costs and all other relief as is just and appropriate." *Id.* at ¶ 86. Other documents in the record[1] include the Administrative Complaint, which attaches a letter from one of Mr. Wellman's attorneys requesting an IEP, ECF No. 8-1, and a Settlement and Release Agreement,[2] ECF No. 8-2.

---

[1] The parties stipulated on the record on March 6, 2014, that the Court may consider these documents when assessing jurisdictional issues. ECF No. 20, at 8–9.

[2] The Settlement and Release Agreement states that the Wellman family accepted money "as consideration for the settlement of the above-referenced matter and the full and complete release of the School District as more fully described herein." ECF No. 8-2, at ¶ 2. Other relevant sections include:

> In exchange for the above-referenced payment, Robert and Rebecca Wellman, individually and on behalf of their son, Robert Wellman, Jr., do hereby agree to settle the above-referenced matter and to the fullest extent permitted by law, forever release and discharge the Butler Area School District, its current and former directors, officers, employees, legal counsel, insurers, and re-insurers including, but not limited to, School Claims Services, Inc., from all rights, claims, causes of action, and damages of any nature including, but not limited to, any claim for legal fees and/or costs, which were pursued in the above-referenced case or which could have been pursued in the above-referenced case, pursuant to the Individuals with Disabilities Education Improvement Act (IDEA), as amended; the Americans with Disabilities Act (ADA); or any other Federal or State statute, including the regulations promulgated thereunder.

*Id.* at ¶ 3.

> Robert and Rebecca Wellman, individually and as parents and natural guardians of Robert Wellman, Jr., acknowledge, understand and agree as follows: . . . that by signing this Settlement and Release Agreement, they do hereby forever release, relinquish and discharge the Butler Area School District, its current and former directors, officers, employees, legal counsel, insurers, and re-insures, including but not limited to, School Claims Services, Inc., from all rights, claims, causes of action, and damages of any nature including, but not limited to, any claim for legal fees and/or costs, which were pursued in the above-referenced matter or which could have been pursued in the above-referenced case, pursuant to Individuals with Disabilities Education Improvement Act (IDEA), as amended; the Americans with Disabilities Act (ADA); or any other Federal or State statute, including the regulations promulgated thereunder.

*Id.* at ¶ 4, 4(E).

This Court previously granted in part and denied in part the Defendants' Motion to Dismiss the SAC, *see* Text Order dated June 10, 2014, and directed the parties to answer the SAC, which they did, *see* ECF No. 28. However, the Court of Appeals for the Third Circuit subsequently issued its opinion in *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014). Because this Court believed that *Batchelor* could be read as calling into question this Court's jurisdiction as to this case, it ordered supplemental briefing regarding that case's import, with those briefs and additional supplemental briefs filed thereafter, *see* ECF Nos. 34; 35; 40; 43.

The IDEA requires plaintiffs to exhaust their administrative remedies before bringing a suit in federal court, meaning that district courts lack subject matter jurisdiction over such actions unless and until they are brought by a "'party aggrieved by the findings and decisions' made during or pursuant to the impartial due process hearing." *Batchelor*, 759 F.3d at 272 (quoting 20 U.S.C. § 1415(i)(2)(A). *Batchelor* affirmed a district court's dismissal of claims under Rule 12(b)(1), holding that retaliation claims under the ADA, the RA, and the IDEA all fell within the IDEA's exhaustion requirement, and no exception applied under the facts presented. 759 F.3d at 269. Our Court of Appeals was unequivocal in *Batchelor*: "Exhaustion of the IDEA's administrative process is [] required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Id.* at 272 (citing 20 U.S.C. § 1415(l)).[3] The court further stated that the statute:

> "bars plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—*e.g.,* section 1983, section 504 of the Rehabilitation Act, or the ADA." *Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 281 (3d Cir.1996) (finding plaintiffs properly exhausted ADA and Section 504 Act claims by participating in an IDEA due process hearing). Thus, determining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under the IDEA.

---
[3] *See also id.* at 275 n.11 ("[A] guidebook . . . issued by the Pennsylvania Office for Dispute Resolution notes that, in addition to IDEA claims, due process hearings regularly address claims made under Section 504 of the Rehabilitation Act.").

> Intertwined with this inquiry is whether the claim could have been remedied by the IDEA's administrative process. This means that, absent the application of any exceptions, all of Appellants' claims made pursuant to the IDEA require exhaustion, as do any claims asserted under Section 504 and the ADA, if they seek relief that is available under the IDEA.

*Id.* at 272–73 (internal alterations omitted). The *Batchelor* Court concluded that "the plain language of the IDEA required exhaustion [], as there is a logical path to be drawn from the Appellants' claims of retaliation to the District's failure to provide, and Ms. Batchelor's effort to obtain for, Ryan a free appropriate public education." *Id.* at 274–75 (internal quotation marks omitted). The Court rejected the argument that "this action is exempt from the requirement to exhaust administrative remedies pursuant to the IDEA" because "[t]he issues presented ... are not educational issues [;] [r]ather they are issues of civil rights resulting from Defendants' retaliatory conduct." *Id.* at 273 (alterations in original).

In his first supplemental brief (as well as in his SAC itself and his Opposition to Defendants' Motion to Dismiss), Mr. Wellman argued that he did not need to exhaust his administrative remedies, or that exhaustion was excused, because he seeks relief not available under the IDEA. [ECF No. 35, at 3](). In his second supplemental brief, Mr. Wellman changed positions and argued that he already exhausted his administrative remedies, and that exhaustion is evidenced by the existence of the Settlement and Release Agreement. [ECF No. 40, at 2]().

Mr. Wellman's problem, as the Court sees it, is that his actions after sustaining his concussion indicate that his case is covered by *Batchelor*, and that in essence he has pled himself into *Batchelor*. Why so? From the very beginning, he treated the factual circumstances arising in this case as dealing with "matter[s] *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Batchelor*, 759 F.3d at 274 (quoting 20 U.S.C. § 1415(b)(6)(A)) (emphasis in original). He clearly thought the IDEA was implicated, in that he initially filed a Due Process Complaint pursuant to

that statute. While he claims he only brings claims which are outside the scope of the IDEA (and in fact, he does not have a Count in his SAC alleging a violation of the IDEA), his SAC is plausibly framed in terms of failures of the School District and its officials to address and accommodate his medical condition in the form of implementing changes to his overall educational program based on the injury he sustained in the school setting and which affected his education. He then claims his injuries were exacerbated by the School District's failure to adequately address that injury. This being the case, any claims he raises in this lawsuit were either necessarily released by his settlement with the School District, or have not yet been exhausted administratively. The Court will therefore dismiss the case without prejudice so that a special education hearing officer has the opportunity to determine, in the first instance, what claims may or may not have already been addressed in the administrative setting and have been released by virtue of the settlement agreement, and to further develop the record on any claims not released.

Mr. Wellman heavily relies on a prior Third Circuit decision in support of his first position that he did not need to exhaust his administrative remedies or that exhaustion was excused because he seeks relief unavailable under the IDEA. *See W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007) (abrogated on the basis that plaintiffs cannot sue under § 1983 for IDEA violations). In *Matula*, a student's mother brought claims under § 1983, the RA, and the IDEA, asking for compensatory and punitive damages after entering a settlement agreement approved by an administrative law judge ("ALJ") and after additional administrative proceedings that resulted in the ALJ issuing a fifty-four (54) page opinion. *Id.* at 489–90. The Third Circuit held that exhaustion was not required because (1) Plaintiffs sought relief unavailable under an administrative proceeding (which is an exception to the exhaustion requirement) and (2) the factual record below was fully developed by the administrative proceedings. *Id.* at 496. The court also determined that the

6

settlement agreement was ambiguous, and thus there was a question as to whether the settlement agreement's scope constituted a waiver that barred the suit. *Id.* at 498.

The Court concludes that *Matula* is distinguishable on at least two (2) grounds. First, unlike in *Matula*, where the record included a fifty-four (54) page opinion from the hearing officer, there is no fully developed factual record here.[4] Full record development is crucial to the proper adjudication of cases falling within the IDEA's scope. *See Batchelor*, 759 F.3d at 275 (providing reasons for requiring exhaustion, namely that it "carr[ies] out congressional intent" by allowing local officials to use their expertise in the field and to develop the factual record). Second, while some relief sought here may not be available under the IDEA on the plain terms of the SAC, *Batchelor* "clarified that whether a claim is subject to exhaustion does not depend on the form of relief, but whether the underlying cause of action is so related to the provision of a free appropriate public education that it should first be addressed by the administrative process." *E.K. v. River Dell Reg'l Sch. Dist. Bd. of Educ.*, No. 11-00687, 2015 WL 1421616, at *5 (D.N.J. Mar. 26, 2015). *Batchelor* explained that where, as here, a complaint includes requests for some relief that is available under the IDEA and other relief that is not,[5] the argument that the relief sought is unavailable under the IDEA fails. *Batchelor*, 759 F.3d at 276.[6] The *Batchelor* Court made clear that even if compensatory and punitive damages may not be available by that name under the

---

[4] Indeed, there are no factual findings addressing any of Mr. Wellman's educational program claims, iterations of which may be presented in this suit. There is similarly no indication that a hearing officer ever signed off on the parties' settlement, meaning that the Court cannot even consider any facts or terms included in that document as part of a developed administrative record. Most importantly, it means that this Court cannot tell whether the factual allegations in the SAC ever were before the administrative hearing officer such that they could qualify as exhausted.

[5] *See, e.g.*, ECF No. 24, at ¶ 86 (requesting "all other available remedies at law, including an award of compensatory damages, punitive damages, attorney fees for this action, costs and all other relief as is just and appropriate").

[6] Moreover, the Third Circuit concluded that even if the complaint actually only asked for monetary damages, courts are authorized under the IDEA to grant other relief, regardless of Plaintiffs' demands. *Id.* (citing similar holdings in the Second and Seventh Circuits). "Relief under Section 1415(i)(2)(C)(iii) is appropriate if it furthers the purpose of the IDEA. We have interpreted this provision broadly to include attorneys' fees, reimbursement for a private educational placement, and compensatory education. *Id.* at 277 n.12 (quotations, citations, and alterations omitted).

IDEA, "such an award may nevertheless be granted as reimbursement for certain expenses incurred." *Id.* at 277.

Indeed, district court cases decided after *Batchelor* in this Circuit have recognized the line drawn by our Court of Appeals: if the claim "*relate*[s] to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," the claim must be administratively exhausted before it is brought in federal court, *Batchelor*, 759 F.3d at 274 (emphasis in original), even if a plaintiff purports to request relief unavailable under the IDEA (because the line for such remedies is not always clear), *id.* at 276–78; by contrast, allegations more akin to pure personal injury claims that just happen to occur to a student who is eligible under the IDEA need not be exhausted. *Compare, e.g., M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist.*, __ F. Supp. 3d __, No. 11-5857, 2015 WL 70920, at *4 n.8 (E.D. Pa. Jan. 5, 2015), *appeal filed* Feb. 2, 2015 (explaining that claims under the RA and the ADA were within the IDEA's scope when allegations included that the plaintiff's "ability to function in the school and her ability to learn was substantially harmed" by the conduct at issue, and that her "tenth grade school performance deteriorated further with low grades, temporary suspensions, and detentions."), *E.K.*, 2015 WL 1421616, at *4 (dismissing for failure to exhaust claims asserted under the RA and the Fourteenth Amendment Due Process Clause because the requested "evaluation of a student's learning disability, the provision of corresponding accommodations and the benefits of education, irrefutably relate to the 'identification, evaluation and educational placement of a disabled student'"), *and C.L. ex rel. K.B. v. Mars Area Sch. Dist.*, No. 14-1666, 2015 WL 3968343, at *13 (W.D. Pa. June 30, 2015) (dismissing complaint based on failure to exhaust allegations "repackage[ed]" as claims under the RA, ADA, and Fourteenth Amendment Due Process Clause via § 1983 when the claims asserted that the School District denied plaintiff a FAPE by "failing to timely initiate an IEP and taking discriminatory actions

8

against him") *with M.C. ex rel. R.C. v. Perkiomen Valley Sch. Dist.*, No. 14-5707, 2015 WL 2231915, at *6 (E.D. Pa. May 11, 2015) (holding sexual abuse by a student against an IDEA-eligible student was not "related to her education but rather a sexual assault and subsequent inaction by the District," therefore RA and ADA claims against the district and bus company were not covered under the IDEA). This is true even when the plaintiff does not expressly invoke the IDEA in a complaint or bring a count under the IDEA, because allegations which are "artfully framed as discrimination claims" may still directly "concern whether . . . a student [has] a disability and whether Defendant acted appropriately in response to . . . [a] request for accommodations to ensure [a student's] right to a FAPE." *See, e.g., J.Q. v. Washington Twp. Sch. Dist.*, __ F. Supp. 3d __, No. 14-7814, 2015 WL 1137865, at *8–9 (D.N.J. Mar. 13, 2015) ("Plaintiffs' claims [under the ADA, RA, and New Jersey law but not the IDEA] 'palpably relate' to whether Defendant provided I.Q. a FAPE—the principal protection guaranteed by the IDEA."); *A.D. v. Haddon Heights Bd. of Educ.*, __ F. Supp. 3d __, No. 14-1880, 2015 WL 892643, at *12 (D.N.J. Mar. 2, 2015) ("Plaintiffs' discrimination claims [under, *inter alia*, the ADA, RA, and Fourteenth Amendment pursuant to § 1983] in this instance explicitly center upon the appropriateness of the education provided to [the student] in light of his disabilities").

With these cases in mind, the Court concludes that Mr. Wellman's SAC is not asserted *in spite of* his status as a student eligible under the IDEA, which may not require exhaustion, but rather *because of* his status as a student potentially eligible under the IDEA—his claims are framed as part and parcel of a general scenario "*relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to [him].'" *Batchelor*, 759 F.3d at 274. The SAC alleges that after he suffered a concussion, the School District and its officials including Dr. Wyllie and the football coach failed to provide adequate educational support, ignoring his condition and failing to adjust his educational program to better

9

accommodate him—he thought he should receive these accommodations and changes to his educational plan *because of* his injury, and that initial injury itself is not alleged to have occurred based on any wrongdoing outside the scope of his educational program on the part of the School District or its officials. His claims in the suit are therefore inherently related to his identification, evaluation, and placement under the provisions of the IDEA.[7] Post-*Batchelor* (if not before), this is the type of case that falls squarely within the IDEA's exhaustion requirement.

Having concluded that his claims must be administratively exhausted, the Court will now determine whether the Settlement and Release Agreement rendered the claims exhausted, as Mr. Wellman contends in his Second Supplemental Brief. ECF No. 40. His essential argument is that the Settlement and Release Agreement shows he went through the administrative process to some extent, that the Agreement is the equivalent of a decision by a hearing officer and should be treated accordingly, and that failure to do so would discourage settlement of IDEA claims. He contends that in *Batchelor*, it was subsequent events (retaliation) which were not exhausted, whereas here, the suit deals with "the same events that were covered by the administrative proceeding that he initiated and his parents settled." *Id.* at 3.

The Court concludes that the Settlement and Release Agreement does not evince an exhaustion of remedies sufficient to permit suit in federal court under 20 U.S.C. § 1415(i)(2)(A). Indeed, *Batchelor* itself intimates that a settlement agreement is insufficient to show exhaustion of remedies:

> "[A]lthough the parties entered into the binding Settlement Agreement, as a threshold matter that is not a final decision issued by a hearing officer that they can argue the District failed to implement. *See* 20 U.S.C. 1415(i)(1)(A) ("A decision made in a [due process hearing] ... shall be final...."); *id.* § 1415(i)(2) ("Any party aggrieved by the *findings and decision* made under this subsection ... shall have the

---

[7] Perhaps best demonstrated by the filing of a Due Process Complaint on his behalf seeking a hearing, an IEP, compensatory education, and private school tuition.

right to bring a civil action with respect to the complaint presented pursuant to this section....") (emphasis added).

759 F.3d at 279. Other district courts have come to similar conclusions, recognizing that development of the underlying factual record is one of the primary purposes of exhaustion, and that it is simply not served by settlement without any decision or findings by a hearing officer. *See, e.g.*, *Zdrowski v. Rieck*, No. 13-12995, 2015 WL 4756470, at *13 (E.D. Mich. Aug. 11, 2015) (stating that "the Court does not believe this particular settlement suffices for IDEA exhaustion purposes—because there was no due process hearing, there are no findings of fact, and the order itself does not preserve Plaintiff's right to bring suit in the district court") (collecting cases holding settlement agreements insufficient for exhaustion and one case holding that it is);[8] *J.H. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ.,* No. 08–488, 2009 WL 1322514, at *1 (D.N.J. May 11, 2009) (holding orders of settlement insufficient for exhaustion where "[t]he ALJ orders incorporating the agreements contain no factual record, no resolution of evidentiary disputes, nothing but the agreement arrived at by the two parties"); *Pedraza v. Alameda Unified Sch. Dist.*, No. 05-04977, 2007 WL 949603, at *5 (N.D. Cal. Mar. 27, 2007) (holding mediated settlement agreement insufficient to establish federal jurisdiction, but also finding exhaustion futile on the facts presented).

In another recent case arising in this Circuit, a district court denied a motion to dismiss on the basis that plaintiffs claiming to have already exhausted their administrative remedies offered proof of that exhaustion in the form of an Office of Administrative Law Decision Approving Settlement, which clearly stated that "[t]he parties have resolved all issues in controversy that are within the jurisdiction of the Office of Administrative Law" and that "retaliation claims for

---

[8] That court allowed the defendants to waive their argument by stipulation because the Sixth Circuit does not treat the exhaustion of remedies under the IDEA as a jurisdictional requirement. *Id.* at *13. The Third Circuit has held that the inquiry does go to a district court's subject matter jurisdiction, however, *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994); *Batchelor*, 759 F.3d at 272, and therefore this Court could not recognize any similar "waiver" even if one was made.

11

violation of the First and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12203 that petitioners raised seek remedies not available in the OAL." *G.M. v. Brigantine Pub. Sch.*, No. 14-4606, 2015 WL 3604061, at *6–7 (D.N.J. June 8, 2015). Here, there was no similar determination made in the first instance by a hearing officer, even in the context of a settlement agreement. As such, the Court concludes that the Settlement and Release Agreement does not suffice to show exhaustion of remedies, given what is pled in the SAC.

Now that the Court has concluded that the Settlement and Release Agreement did not suffice to exhaust Mr. Wellman's administrative remedies, the final question is whether any exception applies to this case which would excuse the exhaustion requirement. As addressed at length above, the Court concludes that the vitality of the exception to exhaustion for relief that cannot be granted administratively may be on shaky footing (if not completely undone) after *Batchelor*, and if it retains vitality, it is only in rare circumstances not presented here. This leaves the other exception which could arguably apply given the facts of this case: that exhaustion would be "futile or inadequate." *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014).[9]

*Batchelor* identified two (2) situations that excuse exhaustion based on futility: (1) when the factual record is fully/adequately developed (and Plaintiffs had previously participated in hearings on the issues), *Matula*, 67 F.3d at 496; and (2) when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)," (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). The *Batchelor* Court also recognized that district courts have "expanded this rule to situations where [(3)] the plaintiff sought remedies unavailable under the IDEA, and [(4)] where

---

[9] The argument that the relief sought is unavailable under the IDEA is perhaps a subsection of this exception, *see Batchelor*, 759 F.3d at 280–81, but since there are other aspects to it, the Court will address it separately.

the court was not presented with educational issues to be resolved." *Batchelor*, 759 F.3d at 280–81. Without further assessing the propriety of those expansions, the court explained that none of them existed in its case, and therefore their application was inappropriate. *Id.*

This Court also concludes that none of these exceptions applies to the facts of this case. First, there has been no factual development of the record below as to the circumstances of Mr. Wellman's injuries and what the School District actually did or did not do in response to them in terms of adequately identifying and evaluating Mr. Wellman and providing him with a free and appropriate public education, including no finding by a hearing officer that the relief sought is unavailable under the IDEA, as occurred in *G.M.*, 2015 WL 3604061, at *6–7. Second, there are no allegations of an emergency situation, especially because Mr. Wellman is past the age of majority. Third, the Court previously addressed the issue of whether remedies are in fact available under the IDEA and concluded that *Batchelor* forecloses this exception within the facts of this case. Fourth, the Court has also concluded that the SAC alleges facts dealing with Mr. Wellman's educational placement program and alleges that the School District failed to accommodate his requests in those regards based on his injury. Though they are "repackaged" as claims under the ADA, RA, and § 1983, they principally relate to Mr. Wellman's education. Because no exception to the exhaustion requirement applies in this case, the Court concludes that remanding the case for further proceedings before the hearing officer is the prudent course.

For the reasons explained above, this case will be dismissed without prejudice as to all Counts due to lack of subject matter jurisdiction based on Mr. Wellman's failure to exhaust his administrative remedies under the IDEA. This Court's Order dated June 10, 2014, is vacated and the Court dismisses the case so that a Special Education Hearing Officer may consider in the first instance whether Mr. Wellman has released these claims because they arise under the IDEA and

further develop the factual record of any claims not previously released, as is required by the IDEA and our Court of Appeals in *Batchelor*.

An appropriate Order will issue.

s/ Mark R. Hornak<br>
Mark R. Hornak<br>
United States District Judge

Dated: September 2, 2015

cc: All counsel of record